Thank you, Your Honor. May it please the Court, my name is Eric Hamilton and I represent the Attorney General. This Court should vacate the judgment and injunction for three reasons. First, plaintiffs lack standing because GA 38 does not inflict a substantial risk of harm on them and the Attorney General cannot redress whatever injury plaintiffs have. Second, plaintiffs' ADA and Rehabilitation Act claims fail because they have not exhausted administrative revenues and they have no viable theory for liability. Plaintiffs admitted in the District Court that they had not shown intentional discrimination and they admitted they are not seeking an accommodation from the Attorney General. Third and finally, plaintiffs' equitable enforcement claims fail because the statutes they cite all implicitly preclude equitable enforcement. With that, I'd like to turn to standing and the first element of standing, injury in fact. There are three different theories of an injury in fact before the Court. Plaintiffs have a theory of an equal access injury, the government has offered a different theory for an equal access injury and in the District Court considered a theory for a reasonable access injury. I'll begin with the current theory plaintiffs argue. Plaintiffs say GA 38 deprives them of equal access to education because it deprives their schools of the ability to engage in individualized decision making. Well, this is not a concrete injury. Spokio explains that a concrete injury must be real, it must actually exist, but under GA 38 plaintiff schools still retain wide discretion to choose different combinations of accommodations that make their safe. Consider for example the Killeen School District. Killeen does not mandate masks, but this is in the record at 3303. They encourage face masks, they host vaccination clinics, they administer rapid COVID tests, and they do enhanced cleaning. So the only reason plaintiffs haven't received individualized decision making is because they haven't sought it. This then is a and Glass against Paxton say does not create standing. Now it would be enough for this court to reject the standing theory plaintiffs are offering today, but it's worth addressing the other theories. The United States says plaintiffs lack equal access to education because plaintiff's doctors say that plaintiffs cannot attend school without universal masking. And the reason plaintiffs can't attend school without universal masking is because of the face of getting COVID-19. So what is the increased risk that plaintiffs face from getting COVID-19? Well in the district court we showed, and this is all laid out at page 14 of our opening brief, that because of all the things plaintiff schools are doing to keep kids safe from COVID-19, adding a mask mandate on top of that, it makes no material difference to the COVID-19 positivity rates in plaintiff's seven schools. But even if plaintiffs had shown some change in the increased risk of getting COVID-19, it would still be in shrimpers. This court noted that slight increases or decreases in risk of harm do not create standing because if it were otherwise, it would drain the actual or eminence requirement of all meaning. Now the district court considered a different theory for an injury in fact. The district court considered whether GA38 deprives plaintiffs of reasonable access to education. Well this theory also doesn't withstand scrutiny. Three of the seven plaintiffs, ES, SP, and MP, have or say they will go to school even if the decision to receive instruction at home is a choice that does not create standing. Turning to redressability, plaintiff's injury, however formulated, is not redressable by an injunction against the attorney general. The attorney general can't mandate masks. He can't order plaintiff schools to give plaintiffs anything. And so plaintiffs should have included their school districts in this action, but they decided not to. And that choice distinguishes this case from all the other school mask mandate cases that plaintiffs have cited. Mr. Hamilton, with as much precision as you can muster, tell me what is the redressability burden that the plaintiffs have? How would you formulate it? Again, with as much specificity as possible. Well their burden is to prove by a preponderance of the evidence, because this case was tried, that the injury is redressable and redressability turns on likelihood. The likelihood, they must show that this is not a speculative theory for redressability and instead it's likely redressable. But this is an inherently speculative theory of redressability. Right now, four of the seven school districts at issue don't mandate masks. Just on Friday, the Richardson School District announced they were pulling down their mask mandate. With that, I'd like to finish. Let me ask you this. If the school district, in its discretion, found it necessary to issue a mask mandate, let's say to the aide that works with one of these children day in and day out, GA38 would an injunction against the Attorney General preventing enforcement and redress the injury? Well, it would not, Your Honor, because if that plaintiff still came before this court, it would still be speculative whether that school district would decide to mandate masks. No, no. I'll give you a hypothetical. If the school district decided that it was necessary to issue a mandate for the safety of that student, wouldn't GA38 prohibit that? Yes, yes. If there was evidence that yes, that was the decision and I guess no matter what, that that would stay in place, then yes, that does sound like a redressable. Why wouldn't that redress that student's injury? Well, this is a different situation. No, take my hypothetical. Yes. Well, I believe it would redress the injury. It would, yes. But I view this as a different situation because the school districts are constantly changing, whether they are mandating masks and there's also a delta between the activities that plaintiffs want to be involved in at school and what their school districts are mandating masks for. Consider, for example, E.T. is involved in dance class, but that school district doesn't mandate masks for dance. J.R. does choir where there are no mask mandates. You understand that only one of the plaintiffs would show standing both have jurisdiction. Yes. So it doesn't matter if some of the students don't meet all of these same criteria. Correct. Yes. But in the end, for each of the seven plaintiffs, this is still a speculative theory of redressability. And let me ask you about that. The district court heard evidence and found that personal physicians had recommended some of the students not go to school because of their enhanced vulnerability and severe risk of serious disease or illness or death. The parents were concerned about sending their children under those circumstances. The CDC recommends masks in school, even with vaccinated people in here. You agree, don't you, that a lot of the people in the school were unvaccinated? Yes. So why does that not support the proposition that these children have an enhanced vulnerability to COVID that require a reasonable accommodation for at least to show that, you know, like that aid and that nurse, unvaccinated, no mask, working day, but student? Yes. The reason is because we showed in the district court that with all the other accommodations available to plaintiffs, I mean, you know, I read some for the clean school district, but Richardson also, this is at 3-1-1-0 of the record. They make clear desk shields available for anyone who wants one. They do social distancing. There are air purifiers in every classroom. With all of that going on, we offered statistics in the district court. These are statistics the district court called important and persuasive. And it showed that the, the change in COVID-19 positivity rates from adding a mask mandate on top of that, it made no material difference. The statistics didn't compare incidents of contacting COVID for vulnerable children with diseases such as these children have with other students. Wouldn't that be the proper comparison? Well, I'm not sure that vulnerable children, of course, are at an increased risk of serious of actually testing positive for the virus. Well, there's evidence that it does, and the CDC recommends masks, even when everybody's vaccinated. We know a lot of these folks are not even vaccinated. Yes. Yes. But even if you disagree with our arguments on standing, in our view, plaintiffs for claims each fail on the merits. I'd like to begin with the claims that plaintiffs have brought alleging violations of the ADA. Before you get there, let me one more quick standing question. Yes. Are we allowed to take judicial notice of facts outside the record that impact standing? Yes. Yes. This court did so in the Gibson case. And if you're referring to the fact that vaccination is now approved for ages in which each of the seven plaintiffs fall, the Seventh Circuit noted the vaccine eligibility of a party that where where that party had only become eligible for vaccination on appeal. Circling back to redressability. I still want to get a little more drilled down precision on what exactly the state view is on what the plaintiffs have to show. Not. Not sufficient. I take it from your view that that it's not enough that the plaintiffs show that schools may introduce a mask mandate sort of in the abstract. That has to be more specificity that they might or will predictably will introduce a mask mandate in response to an accommodation request. But just describe with precision the state's position again on redressability. Yeah, I think your formulation is exactly right. It has to be likely that in response to an injunction against the attorney general, the defendant here, that then the change in government regulation that would result would cause that regulated party, plaintiff schools, to then mandate masks in response to a request from plaintiffs. That has yet to be made. Yes. Okay, get on to the mask. Let me ask you one thing about what you just said. Wasn't there evidence in the district court that some of the districts would reimpose a mask mandate if GA 38 is enjoined? There was. And plaintiffs explained that an injunction against the attorney general would result in seven mask mandates in plaintiff's seven schools. They were very clear that that is what would happen if GA 38 wasn't joined. But that didn't happen. There were two school districts that were not mandating masks at the time of trial. And both of those school districts, the Fort Bend ISD and the Clean ISD, held board meetings. They considered mandating masks. Neither decided to mandate masks. How much time went by between the entry of the injunction and the stay order, though? I believe it was about two weeks. You know, I mean, that doesn't really show, does it, that once the issue was resolved that the schools wouldn't reimpose a mask mandate? Perhaps, but I do believe it shows that this is still an inherently speculative theory of and it's entirely speculative whether any of the plaintiffs will have their injuries redressed. That doesn't cover either whether the school district would issue limited mask mandates, say for aides who work daily with children or nurses, medical people. I mean, the fact they didn't issue a blanket mask mandate doesn't cover that situation, does it? Yeah, yes, I agree that a school district could also perhaps do a more tailored mask mandate or something like that. But there is also an additional redressability problem, and that is once plaintiff's injury is understood as the risk of getting COVID-19, then you have the additional redressability problem that a mask mandate, even if imposed by the school district, won't necessarily prevent plaintiffs from getting COVID-19. And so it remains entirely speculative whether these plaintiffs will get COVID-19 in school. I think that wasn't a testimony that it would reduce the risk of? Yes, plaintiffs submitted expert reports explaining that, but then we also submitted the data in the in the district court that's laid out at page 14 of our opening brief that showed that because of everything schools are doing, there's actually no change in the risk of COVID-19. Again, your comparison was across the board. It didn't consider the unique situation of these plaintiffs. The plaintiff's evidence was directed to them particularly as vulnerable plaintiffs. Yes, yeah, I agree that the evidence was a bit different. But turning to the merits, plaintiffs ADA and Rehabilitation Act claims fail because they don't have a viable theory for liability. The parties agree that this court should not review these claims under a disparate impact theory, even though it appears the district court did just that. That leads plaintiffs to prove these violations under a disparate treatment or a failure to accommodate theory. Well, disparate treatment requires intentional discrimination. But in the district court, plaintiffs admitted they had not, quote, pled or proven, end quote, intentional discrimination. That's at page 2761. And then a failure to accommodate theory, this just doesn't make sense. Plaintiffs also admitted in the district court, quote, we are not asking for a specific accommodation, end quote. That's at 2775 of the record. The Attorney General can't mandate masks in plaintiff's school and he can't give them anything. Plaintiffs also brought two equitable enforcement claims. The first alleges that the American Rescue Plan Act of 2021, that's the COVID-19 stimulus bill Congress enacted at the beginning of last year, preempts GA38. This claim fails for three reasons. The first is plaintiffs don't have a substantive right under the statute to vindicate. The ARP Act creates a grant program. It's a grant program that gives money to schools to deal with COVID-19. And plaintiffs aren't eligible for grants. And under the Tenth Circuit's decision in State Streets Alliance versus Hickenlooper, a plaintiff has to have some sort of substantive right to vindicate to bring a claim of this sort. The plaintiffs instead want this court to create a circuit split with the Tenth Circuit. Even if plaintiffs had a substantive right under that statute, the ARP Act implicitly precludes equitable enforcement under the Supreme Court's Armstrong against Exceptional Child Center case. Now in Armstrong, the Supreme Court held that the Medicaid Act implicitly precluded equitable enforcement for two reasons. The first was that the Medicaid Act already vested enforcement authority in the Secretary of Health and Human The Department of Education has enforcement authority under 20 U.S.C. 1234A and 1234C to claw back grant money where there is a violation or to withhold future grant money. Let me ask you about an accommodation. The plaintiffs disagreed that they waived any right to an accommodation. Now let's say we agree that they didn't waive it. The regulation says a public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability unless the public entity can demonstrate that making modifications would fundamentally alter the nature of the service program or activity. Now if the school board decides that an accommodation, either a blanket accommodation or a limited accommodation, is necessary and reasonable, they can't do that with GA38. Is that right? Yes. So your only argument as to modifications is plaintiffs waive that claim. Yes, and the difference is that the Attorney General can't give plaintiffs this modification. The school districts are the ones with the responsibility to craft the combination of accommodations that make the school safe for plaintiffs. All right. Well, this came up in the argument in the District Court and when they made the same argument to the district, he said, well, let me ask you this, what kind of purpose would it make to impose an injunction on the school board? They would just throw up their hands and say, look, we can't do that and we face penalties from the Yes, well, I think the way this would play out is if a school district actually concluded that they could not comply with both the ADA and the Rehabilitation Act as well as GA38, it's of course true that federal law supersedes the conflicting state law, but that's not the situation here. Plaintiffs haven't shown that any of their school districts believe that they cannot statutes and GA38. It does, but the finding is not supported and we believe would fall under either clear air review or as we noted in our brief, because the District Court's ADA and Rehabilitation Act analysis is so fundamentally flawed, it does not also need to treat the term general put in the record that would go against that finding other than the statistics that you produced. That was the main piece of evidence, but I'd like to point out something that plaintiffs submitted. They submitted an expert report from a special education expert and that report noted in talking about disabled students who cannot wear masks because of their was not always possible for every student with disabilities. Plexiglass screens and other techniques were used to ensure safety. That's at page 3036 of the record. So, plaintiff's own expert admits that in some situations, other accommodations can be organized together to still keep students safe. All right, but doesn't the school district, doesn't that have to indicate, would make the decision whether it's reasonable and necessary to have some kind of mandate? Isn't that the entity that makes that decision? Yes, well, or the school. I'm not sure if it's the school board or the individual school. Who would do that? Yes. This GA38 prevents them from making that decision, doesn't it? Well, it does not. There's still nothing barring plaintiffs from meeting with their schools and trying to find a accommodation, a mix of accommodations that works to both protect the adequacy of their education and to keep them safe from COVID-19. I didn't hear you give me any evidence that the state put in to show what that accommodation would be that would that would foreclose a decision by the school board that is necessary to have some kind of limited mask mandate. Well, we did show that the the Killeen School District at 3303 of the record has various procedures in place to protect students from COVID-19 and that while not mandating masks and that the COVID-19 positivity rates are not materially different. Thank you, your honors. All right, Mr. Hamilton, we'll see you back on rebuttal. We'll now hear for the attorney for the main party. Ms. Cokerley, welcome. Thank you, sir. Good morning and may it please the court. There was a trial on the merits in this case and the evidence showed that these kids are at greater risk of infection and of serious disease from COVID-19. And the evidence also showed that when there is high community spread, a mask requirement is the single most effective accommodation a school can provide, whether it applies to the whole school or to a classroom or just to the teachers and aides and therapists who work one-on-one with these students. Based on all of that evidence, the district court found as a matter of fact that plaintiffs are either being forced out of in-person learning altogether or they must take on unnecessarily greater health and safety risks than their non-disabled peers in order to attend school. Counsel, can you help me understand where that finding of fact is in the district court's opinion? It's at page 2391 of the record on appeal. Okay, so can you just let's read it together. I don't understand. There's a lot in your brief about findings of fact and clear error and the deference we owe and this doesn't look like a finding of fact that I'm used to looking at, so I'm hoping you can help me understand. What I see is, quote, the evidence here supports that the use of masks may decrease the risk of COVID infection in group settings. Is there another finding of fact on the page you, as I'm reading from the page you just gave me, 2391, is there another finding of fact on this page that I'm missing? Plaintiffs, it's the next sentence. Plaintiffs here are at a higher risk of contracting COVID-19 than their non-impaired peers and I can cite the evidence that supports that finding. The district court doesn't. This is a conclusion, not a finding, so what I'm trying to understand is, you know, in a typical finding of fact, you've experienced and I've seen these many times, the district court would say, you know, I see defendants exhibits 10 and I see plaintiffs exhibit 6 and I credit plaintiffs exhibit 6 and here's the statistics. There's not a citation. There's nothing. It's just a conclusory sentence. Plaintiffs here at a higher risk of contracting COVID than their non-impaired peers. I'm not sure that that particular sentence is necessarily disputed. I took the question to be much more specific, which is masks are the only way to accommodate this risk. So, your honor, first of all, so you're correct that that is a conclusion and I can cite the evidence that we presented that supports that conclusion. Can you show me anywhere in this opinion where the district court says I agree with the plaintiffs on this? They said plaintiffs here are at higher risk of contracting COVID than their non-impaired peers. Well, I'm not sure. I'm not sure necessarily that that's disputed. It sounds like maybe there's a dispute about contraction versus serious ramifications, perhaps, but I'm not sure it really gets at the real question, right, which is you're relying on findings of fact to show that the injury to these plaintiffs is concrete, actual, or imminent and particularized and I'm just struggling to see in the opinion that you're relying on where the district court makes a relevant finding of fact. So, I understand the question, your honor, and I guess in the context of this trial what you just heard from the attorney general's lawyer that the only evidence they put on at trial, the only evidence was what they cite at page 14 of their brief, which is that if you compare the positivity rates for all children at just the seven schools that these children attend, the ones that had that had mask mandates had similar positivity rates across the board than the ones that did not. That's the only evidence that the attorney general presented. So, in view of that complete lack of evidence on the other side, the fact that this court's factual findings are not accompanied by citations to the record, I think citations to the record would have been unnecessary. The record only supported one conclusion and he found that conclusion. That the plaintiffs are at higher risk. That the plaintiffs are at higher risk. And so, you have evidence in the record that shows that and you just didn't cite it. Yes. So, but we're supposed to say that this finding is subject to clear error review without a citation. Yes. And so, what do you get from that? So, suppose you're right about that, how does that help you with respect to the mask mandate? The next sentence, your honor, says because GA38 precludes mask requirements in schools, plaintiffs are either forced out of in-person learning altogether or may take on unnecessary health, greater health and safety risks than their non-disabled peers. Again, you're right, there's no citation. But what I'm saying to you, your honor, is because there was literally no a citation to the record would have been unnecessary. Now, we're talking about, we're talking about a completely one-sided factual presentation. And I'd like to speak specifically, if I could, about the record evidence and our plaintiffs. What I heard just now is, well, first of all, I heard a lot of references to the Killeen School District, which is one of the but we presented evidence that they withdrew a mask mandate specifically as they had been placed on the list by the Attorney General of non-compliant schools. Let me talk about AM, who attends the Edgewood School District. What I heard— I'm sorry, just so we're comparing apples and apples, can we talk about the Killeen? Since we understand the Killeen School District, that's the, so can we just meet on that so that there are not ships passing in the night? Sure. What is the evidence that there's higher risk to the plaintiff in the Killeen School District without a mask mandate? We put on evidence, your honor, that ES is a student who has asthma, moderate to severe asthma, and whose doctor has instructed her parents that she should stay out of situations where she is in contact and immediate proximity with people who are unmasked. And so the parents of ES, the parents, faced the choice of either keep this child at home where she can't access school or send her to school with what her doctor told them was a greater risk. And what is the evidence that ES faced a greater risk of contracting COVID in the Killeen ISD than her non-asthmatic peers? I would say for ES, there is no evidence for that one plaintiff. That's what's so striking about it, right? You say it's one-sided, you say, let's fight, look at the factual findings, and there's just nothing there. It's just a sentence with no citation and no evidence in the record. It's hard to figure out how to review it. So let me talk about AM, okay? So AM attends the Edgewood School District. He has cerebral palsy and is quadriplegic. He is also immunosuppressed. So he does have a greater risk and the evidence is stipulated by the Attorney General at page 2888 of the record that he is at greater risk for infection or illness than most children. Now, according to the Attorney General's counsel today, the AM and his parents could just decide to stay home and that's a voluntary choice. Okay, so what does it mean for him to stay home? Well, according to the stipulated record, if the San Antonio School District no longer mandates masks, this is Edgewood actually, if then he would leave in-person instruction and receive homebound services, which would be only four hours of instruction per week. So that's a voluntary choice. What the Attorney General is saying is that that's a voluntary, they'll just prefer to have him stay home for four hours of voluntary distancing and the other things that the motions panel rested its decision on are not going to be possible. This is a child who's a quadriplegic. He has cerebral palsy. There's also evidence, for example, SP. SP has spina bifida, he needs physical therapy, and he has trouble performing physical tasks. That's at record 2896. And his school, sorry, his school as well had a mask requirement at the time of trial and had one until last Friday. Actually, there was about a four-day period where that school lifted its mask mandate because a lot of students were vaccine eligible. And then they, then on January 7th, they reinstated the mask mandate after a 5100% increase in the number of new cases. So that school concluded that despite the presence of vaccines and despite the availability of other mitigations, that it was necessary, its judgment based on conditions on the ground to reinstate a mask requirement. The Attorney General says that is not possible. That is unacceptable. And that is not a reasonable accommodation, even for a child like SP, for whom none of the other kinds of things like distancing, plexiglass, or even vaccines will really help. Because of course, we're talking about now a variant for which a two-course vaccine is not an adequate protector against infection. You need a three-course vaccine. And even then we're talking about much higher So, the purpose of my going through this, Your Honor, is to say we're not talking about a voluntary choice. We're also not talking about a situation where this is an abstract and speculative increased risk, like in the shrimpers case or in Clapper or in the glass case. Can I pause you? I just want to make sure I understand the injury. So you say over and over and over in the brief that the injury is not increased risk, that the injury is denial of access to the school on the same terms. So, there is a disconnect between everything we've talked about in the last 10 minutes, which is increased risk, increased risk, increased risk, and the injury in fact that you're adamant about in the red brief, which is we're just talking about denial of access at the school. So, help me understand. So, increased risk is part of our injury, but it is not the sum total of our injury. And that's what was the case in shrimpers and Clapper and Glass. In each of those cases, there was an increased risk that was the sum total of the injury. There was nothing else. What we have is an increased risk that we have proven at trial with medical evidence. And based on that increased risk, medical professionals are telling these parents of disabled children that their children will be at risk if they attend a school in person where they are going to be with people who don't have masks on. It is that part that distinguishes this case from shrimpers and Clapper and Glass because it's not just the increased risk. It is also, there was, it is the fact that they are denied access to a public facility to which they have a right on the same terms as their non-disabled. Do you agree that you're, I'm going to go back to you. Do you agree or disagree that your client's burden on redressability is to show what their schools would predictably do in response to an accommodation request? Yes. And no such accommodation request has been made, is that correct? That's correct. And that's because for, at the time of trial, five of the seven schools already provided it. And one of the at that time, they were actually aware of the concerns of children of disabled students. At record 3017, the evidence is that the school districts quote, heard from many parents, including those concerned about children with disabilities who needed access to in-person instruction, but couldn't safely attend school if we didn't implement safety protocols, including masks. And at record 3076, we made these decisions with caring concern for all of our students, including students with health concerns who may be at higher risk of serious illness. So these schools already responded to the concern about disabled students by implementing mask mandates. In fact, they felt so strongly about it that five of them maintained mask mandates in defiance of the executive order, even after having been threatened with suit or actually sued. Under your interpretation of the interplay between the ADA and the Rehab Act and GA38, under your interpretation of how those play out with each other, could the ADA and the Rehab Act be used to mandate vaccine mandates, to force a vaccine mandate? This is a case about masks, obviously. But suppose we agree with you, we agree with the district court, and suppose that every school district in the Texas from border to border imposed a mask mandate. Could a district impose a vaccination mandate under the theory that that too would further protect children like your clients? I'm not sure, Your Honor. And again, the issue in this case is not whether the Attorney General should require mask mandates. Nobody's saying that. Five of these seven schools did in fact require mask mandates in defiance of the executive order and were under imminent threat of losing those mask mandates. But the evidence we've and of course, I should pause and say the Attorney General, there is also an executive order that prohibits vaccine mandates. So we're not wondering if the logical implication of agreeing with you would be that the ADA and the Rehab Act could be used to force vaccine mandates and what the limiting principle might be. So I'm not sure, Your Honor, but I don't think so. And the reason I don't think so, if you look at the expert evidence in this case, it's certainly true that the best way for any individual to protect themselves is to be vaccinated. The thing about masks and the evidence in the record is very clear about this. Masks have two separate functions. One is to protect the wearer to some extent. That's a secondary function. But the primary function of a mask is to prevent an infected person from sharing the virus with others. And the vaccine is different in that respect. So I think there is a difference between a vaccine and a mask requirement in respect to whether it is an accommodation that protects other people. Now, counsel, while we're talking about logical implications of your position, I understood your answer earlier in your answer to Judge Willett that the ADA entitles your clients to access a public facility on equal terms as everyone else. And here, in your view and in the doctor's view and the parents view, that's a universal mask mandate. So I assume you would agree with me. Actually, no, if I could just correct you. Sure. That is not our view. Our view is that we need to have these children in the proximity of people wearing masks and not in the proximity of people not wearing masks. Whether that means a universal mask mandate, or it means masking in the classroom, or it means have the physical therapist and the nurse who are helping the quadriplegic student with his tasks during the day, that person required to wear a mask, whatever it is, that's the accommodation. Now, we're talking in a case about universal mandates because that's what these schools were already providing. And it made it unnecessary for these students to ask for something more. They were already getting a mask mandate. So does everybody around them have to wear a mask? Yes. So that would apply to presumably every single ADA defendant in the state of Texas in your view. Every movie theater, your clients can sue and require every movie theater because they're subject to the ADA. Every restaurant, every hotel, every library, everything, literally every ADA facility in the entire state of Texas has to mandate masks because the ADA requires it. No. What would be the limiting principle between a school and every other ADA defendant in the state of Texas? Well, so again, this case is not about whether a mask mandate is required. Your theory is that the ADA requires access to public facilities on equal access, and that access requires everyone around your clients to wear a mask. I understand the theory. I'm just trying to figure out what it is that would differentiate every other ADA defendant from the school not defendants here. My theory is that public entities must make, quote, reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of a disability. So in order, for example, for one of these students to bring this claim, this type of claim against, let's say, a public library, which is theoretically possible, they would have to show that there's an actual injury. That means they would have to show it meaningful to them that they were denied access. That they would have to show that they needed access. They would have to show that they wanted access and have accessed it before. And they would have to show that there was some reason to believe that that entity would provide a masking requirement but for this executive order. The executive order doesn't apply to any of those entities, nor does your theory. Your theory is that it would be quite striking to me that we would require any greater showing as to a public library than we would to any other public facility. I'm not saying it would be a greater showing, Your Honor. I'm saying that, so in this case, the thing that they were denied access to is a school and it's an incredibly meaningful experience for them. In fact, it's an experience for them that is guaranteed under federal law and Texas law, right? So it's not just any, like there's no Texas right to go to a movie theater as far as I know. So this is a special kind of access. The ADA absolutely creates a right. The ADA creates a right for everybody to be able to go to the movie theater. I mean, that's why the ADA is such an important statute and that's why I'm not sure why you, I really thought you would agree with this proposition that these rules should apply to every ADA defendant. I certainly agree that for every potential ADA defendant, if they receive a request for a reasonable accommodation, they have to consider that request on a case-by-case basis. That's what would be necessary. Here, it wasn't necessary for these plaintiffs to make a request because they were already getting the accommodation. So there was no need to make the request. There was no need to exhaust. There was no need to do any of that. Let me ask you one question on my time. Did you waive in the What is counsel referring to? You know, I'm not sure. I mean, the words modification and accommodation are sometimes used interchangeably. And so the, what we're talking about, what we raised is a claim for a, under the regulation that the district court cited. The district court cited a regulation saying public entities must make reasonable modifications and policies and practices and procedures. So what would a reasonable modification be here? It would be in a school that didn't have a mask mandate. It would be, please create a mask mandate, at least in a limited way. That would be a modification of the school standard practice. So I don't think there's, there's not a significant difference that I'm aware of between the word modification and accommodation. They're used interchangeably and the dis in any event, the district court actually used the word modification. So if there was a waiver, I'm not I'm not sure I understand that point. You're in it. Thank you very much. Thank you, sir. What I'll hear from Miss Lamar on behalf of the Justice Department. Welcome. Thank you, Your Honors. Good morning. Janay Lamar for the United States. And if you want to, you can remove your mask at the podium. It's totally your call. Thank you, Your Honor. I'd like to first address the concern that the court was just discussing with the Appellee's Council about the limiting aspects of the ADA. The ADA has limits. It is built into the statute and it's built into the case that has analyzed that statute. The limits are that accommodations must be reasonable and they must be effective. And so in this circumstance, we have to look to the record to show what was considered to be reasonable and what was considered to be effective. The only evidence that was entered in this case was that masking was an effective tool to protect these particular children because of their particular disabilities that was introduced from their from their particular doctors, from other experts who had reviewed their records, from other experts who were in the field and understood their disabilities and the risks that those pose in light of the pandemic. Picking up on what you just said. So the United States, you argue in your brief, page 27, and you cite a Second Circuit decision for this proposition. But the U.S. argues in its brief that Title II preempts, quote, inconsistent state law when necessary to effectuate a required reasonable modification. Again, citing the Second Circuit decision in Mary Jo See. So I just want to clarify, is it the United States position that Title II preemption is so broad that it can swallow all state law so long as someone along the way declared an accommodation reasonable? No, Your Honor. There is nothing, I don't believe there's anything particular to Title II preemption. This is just about preemption generally. And under preemption, generally, the Supremacy Clause rules that when a federal statute is, there's an obstacle to a federal statute from a state law, that state law cannot supersede the federal statute. Federal law has to be supreme. And so in this circumstance, these points have showed that they required a reasonable accommodation, that they required masking. And as Judge Davis was mentioning earlier, it's not just universal masking. This is masking that to just an aid, to just a classroom, to just after children have actually contracted COVID, as the Killeen Independent School District currently has. They require that if kids are coming back after just experiencing COVID and suffering from COVID, they have to wear a mask when they come back to school for a certain amount of days. And GA38 prohibits any of those requirements. So if someone along the way said that a vaccination mandate was reasonable, that would necessarily, via the Supremacy Clause, in your theory, kind of swallow any state law to the contrary. You could, the implication is that a vaccination mandate, if declared reasonable, could also be imposed under the ADA. Your Honor, I can't say based on a hypothetical, but I can say generally that the reasonable analysis would be different. The reasonable analysis in this case, which is one of the most critical evidences of reasonableness in this case, is that the school districts already required masks. This is a thing that five of them do now. This is a thing that all of them did before GA38. And the courts have consistently held that evidence of reasonableness is the ability to, is the school's ability to do it before. They did it before. They think it's reasonable. They didn't mandate vaccines, but they did mandate masks. That's something that they can control and that was readily controlled by them and used to be mandated by the state of Texas. And so whether or not a vaccine would be reasonable, I don't have the facts in front of me to say whether or not that would be reasonable, whether or not that would be an undue burden for schools to mandate that children go get vaccinated. I don't have evidence in front of me, but there are limits in the ADA about reasonableness and effectiveness. And those are critical limits that keep it from swallowing any state law just generally, but also it's the preemption analysis is limited to this circumstance where there is a conflict. And there is a conflict here where these plaintiffs have proven that they need a reasonable accommodation and some sort of masking requirements and they can't get it only because of GA38. Do you think the reasonableness inquiry would be different in a movie theater or a public library or a restaurant? It might be different to the extent that the library or the restaurant's ability to function is different than a school. And so in a restaurant, for example, you can't go to a restaurant without taking off your mask at some point if you're going to eat in the restaurant. And so it would compromise the essential function of a restaurant if you had to wear a mask in a restaurant the whole time. And that's part of the reasonableness inquiry built into the statute is you have to give a reasonable accommodation unless it's an undue burden or unless it would compromise the essence of a public service. What about a library or a movie theater? In those circumstances, again, in a movie theater you eat, but in those circumstances, the ADA does equally apply. It does apply that there be reasonable accommodations. And those accommodations can be varied and can be limited. There are circumstances in movie theaters, for example, where you cannot be sitting directly next to somebody. There are circumstances in libraries where you don't have to sit directly next to somebody. We don't know the facts of those cases, and the ADA requires an individualized fact assessment. So I can't say for sure how it would turn out in a library, while I would say that the ADA and the Rehabilitation Act do apply to a library. But if the evidence in this case shows that these seven plaintiffs need to have people in their proximity, this is the whole theory of their case, is that people in their proximity need to be wearing masks, the position of the United States government is that that would apply to every ADA defendant in the state of Texas. It's the position of the United States government that to the extent GA38 stands as an obstacle to these plaintiffs receiving a reasonable accommodation, it is preemptive. I'm trying to understand your theory of the ADA. So because GA38 doesn't apply to any of these other defendants, I understood the position from your brief, that the government is here to these seven plaintiffs, and I'm trying to understand if the position of the United States is that everywhere these plaintiffs go that is subject to the ADA, which is every public accommodation, I don't need to tell you the breadth of it, they can require masks of everyone around them. No, Your Honor, because the ADA and the Rehabilitation Act require individualized assessments. But the risk to COVID is the same. See, that's the thing that's so tricky, is that if you can get, if COVID doesn't care if you're in a movie theater, or in a restaurant, or in a school. So that's why I'm trying to, the ADA, I assume applies equally to each one of these things. And I'm not sure why the police side of this case isn't embracing the scope of that ADA. The ADA is for sure a broad mandate across, as you've mentioned, a number of public accommodations as well as public entities and employers. But the ADA also requires an individualized assessment. And so we can't, we can't hypothesize as to what might happen in some other public entity because we don't know the details of that public entity. We don't know what is essential to the function of that public entity. And the Supreme Court was clear in PGA Tour v. Martin that categorical bans go against the ADA's requirement. And NGA 38 is a categorical blanket ban. The court held there that courts and public entities may not rely on categorical statements of reasonable accommodations not being allowed. You cannot just ban an accommodation. You have to assess whether or not a particular plaintiff in a particular circumstance could have a reasonable accommodation and whether or not that reasonable accommodation would be, would conflict with the essence of the public entity. In this case, these plaintiffs proved that. And briefly, Your Honor, just to conclude, I think this case can be reduced to a very simple proposition. If the plaintiff showed, as they did here, that they need masking requirements, whether it's just the aide who is physically moving them or the classmates around them, the ADA and the Rehabilitation Act require those masking requirements. And a state law cannot supersede federal law. For that reason, the United States asks that this court affirm the judgment that the GA 38 is preempted to the extent that it conflicts with the ADA and Rehabilitation Act. Thank you, Your Honors. Ms. Lamar, thank you very much. And finally, we'll hear from Mr. Justman, representing the pediatricians. All right. Good morning, Your Honor, and may it please the court. Jeff Justman on behalf of the American Academy of Pediatrics. We're here as friends of the court to share 22 months of research that the TPS and AAP have conducted and read, reviewed during the pandemic. These are thousands of frontline practitioners and pediatricians whose sole interest is what's in the best interest of kids. And so with that in mind, I'd just like to address three points for the court's consideration today and answer any questions if the court has them. First, I think one broad point of agreement is that it's in the best interest of kids to have in-person schools. Early in the pandemic, there was remote schooling, there was virtual schooling, and the evidence which we cite at footnotes 32 and 33 of our brief says there are negative consequences to remote schooling. And so the best thing for kids in Texas and elsewhere is to have in-person schooling when it can be done safely. So that leads to my second point. How do you safely have in-person schooling? The best evidence that TPS and AAP have reviewed says that you have to have masks. So that's not what the brief says. The brief doesn't say the best evidence. The brief says, quote, it is beyond any doubt that universal masking policies in schools significantly reduce the the your client's an opportunity to clarify the brief. I assume you stand by that statement. So we've reviewed the court's letter. We've responded. We stand by the statements in our brief. So the WHO does not recommend masks for all K through 12 education. Are they somehow, how is it beyond all doubt that universal masking policies are the best interest of children if the So the WHO and and AAP and TPS have pretty similar views on on what masking should be in schools. There are there are differences. I will say, generally speaking, AAP reviews all available research, including a WHO, including UNICEF, including all. Do you review the European Center for Disease Protection and Control? I'm sorry, I didn't hear you. Do you review the I believe all evidence is reviewed. I haven't asked my so what is the European CDC's position on universal masking for in schools? If your honor's asking me, do I know what AAP has reviewed in terms of that agency that the European counterparts of the CDC? I don't know specifically what I'm sorry, but you said you reviewed that. I can tell you that generally AAP and TPS want to review all available medical data. I haven't specifically asked them about that particular agency, but as pediatrician organizations, they want to know the European counterpart to the CDC says, quote, Most children do not develop symptoms when infected with the virus, or do they develop very mild forms of the disease? And they do not recommend masks for any child under the age of 12. So how can the amicus take the position that it is beyond all doubt that universal masking policies from K through 12 are in the best interest of children? I assume the both sentences cannot be true. It can't be both beyond all doubt and the European counterparts of the CDC taking opposite positions. Yeah. So without having reviewed that particular statement, and I don't have that in front of me, I can't speak specifically to that. But I can say, you know, we cite all of the authority that we believe supports the proposition in the brief. And I'm talking about it at footnotes 45 and 46, which, you know, there are seven, eight, different studies as it pertains to masking generally, as it pertains to reducing infections in schools specifically, that's at footnote 46. If there are authorities that come out that say, you know what, this should be modified, then AAP, they want to review them, right? Their goal is not to overstate things or to only focus on a particular area, right? The best interest of So, and that's why, for example, there are interim guidances, right? And so TPS and AAP review the available literature on a monthly basis and they update them and they've updated their guidance for things like how many feet of distance should be within social distancing as one example. And so they'll review all available data and, and update things, right? And so if, if the court has particular questions about a particular study that, you know, I haven't seen and hasn't been raised by any party in this case, you know, I'm happy to address it at, at a later point. I can't speak more specifically to the court your honor gave with. Mr. Guzman, you hit, I think your first point about in-person schooling being preferable and then you had two more. Yeah. Yeah. And, and I'll just make them real briefly. The second point was you need to do it safely. And the authorities at footnotes 45 and 46 of our briefs masking is as part of a layered prevention strategy, the best way to do it safely. And the third point is what I was speaking about with Judge Oldham, which is we understand evidence comes out, guidance should be updated in the best interest of kids. We review all available data and we'll update guidance as appropriate. There may be a time to update guidance as it pertains to universal masking in schools right now in Texas, where, you know, only 16% of children between the ages of five and 11 have received both doses of a vaccine. As of last I checked, there are hundreds of kids in Texas hospitals with COVID right now. Now is not the time to change the recommendation on universal masking. Thank you very much. Thank you. All right, Mr. Hamilton, you're back on rebuttal. You have seven minutes. Thank you, Your Honor. I heard the advocates on the other side have discussed the ADA and the Rehabilitation Act and how individualized decision making is a big part of those statutes. And that's exactly right. And it shows a fundamental flaw in their case in that none of that has happened. Plaintiffs have not met with their school districts and tried to seek individualized accommodations. That's how the ADA and Rehabilitation Act are supposed to work. And they're proceeding under a theory for liability, a failure to accommodate claim that is all about individualized decision making. Is it in the record that the plaintiffs have not met with their school officials? Did you put evidence in on that? We did not put evidence in proving that plaintiffs had not met with their schools. I think this was a condensed case. So that's not shown. But if I'm not mistaken, I believe Plaintiffs Council expressed agreement with that proposition. The second point I wanted to make is the United States discussed preemption. And we certainly agree, as I said, in the first part of my argument, that federal law supersedes conflicting state law. But in our view, that an actual conflict has not been shown. And more importantly, the United States brief does not explain how a preemption analysis fits into this case. They don't argue that plaintiffs can equitably enforce the ADA and the Rehabilitation Act. And even though they argued in the district court that or at least expressed support for plaintiffs ADA and Rehabilitation Act violation claims, their brief on appeal did not. Next, I wanted to respond to something plaintiffs said about the data that we submitted in the district court. They noted that they had submitted expert reports and discounted the data that we presented and is laid out at page 14 of our brief. But this was important data and we didn't need to provide anything else to rebut their evidence. And indeed, at trial, the district court called this data important and persuasive. Finally, to return to redressability, there was some discussion about the evidence that plaintiffs submitted that the Fort Bend ISD and the Killeen ISD would reinstate masks if the GA-38 wasn't joined. What they submitted was a declaration from one of the seven school board members of the Fort Bend ISD that said that if GA-38 wasn't joined, that school district's mask mandate would go back in place. But what happened is after GA-38 wasn't joined, the Killeen ISD met and voted six to zero to not, rather to pull down the mask mandate with the plaintiff's declarant abstaining from that vote. And then as for the Killeen ISD, plaintiffs submitted into evidence a news report citing a unnamed source as saying that if GA-38 wasn't joined, that school district would hold a meeting considering a mask mandate, which the Killeen ISD in the end decided not to do. And so our position is that that evidence, and of course it's plaintiff's burden to show standing, that evidence did not carry their burden. Was there any evidence that the school wouldn't impose limited accommodations? I'm not aware of evidence on that point. And unless the panel has additional questions, I'll conclude by restating our request that this court would vacate the judgment and injunction. Thank you. Thank you. Thanks to everybody. We appreciate your arguments today. The case is submitted.